**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3903
_____

CLIFTON WILLIAMS,
                              Appellant

v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
ULLI KLEMM;
ROBERT BITNER;
JOHN KERESTES;
EDWARD J. KLEM;
PATRICIA A. RAMER;
MIKE VUKSTA;
RICHARD SPAIDE;
ROBERT YARNELL;
CHERYL STANITIS
*(Pursuant to Rule 43(c), Fed.R.App.P.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 08-cv-01915)
District Judge:  Honorable John E. Jones III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2011
Before:  AMBRO, FISHER AND NYGAARD, Circuit Judges

(Opinion filed:  November 3, 2011)
_____

OPINION
_____

PER CURIAM

Clifton Williams appeals pro se from the District Court's order granting

defendants' motion for summary judgment and denying his motion for leave to file a

supplemental exhibit. For the reasons that follow, we will affirm in part, vacate in part,

and remand to the District Court for further proceedings.

I.      Background

Williams, a prisoner incarcerated at State Correctional Institution ("SCI")

Mahanoy,[1] brought this action after he was disciplined for conducting prayer in the diet

room of the prison kitchen.[2] Williams has been a practicing Muslim for over twenty

years. His religious faith requires that he engage in prayer five times each day (dawn,

noon, afternoon, sunset, and evening),[3] attend Jumu'ah prayer (congregational worship)

every Friday afternoon, fast for Ramadan, and give to charity within his means.

The record reflects that on October 23, 2006, Williams was assigned to work

utility detail in the prison kitchen from 1:00 p.m. to 6:45 p.m.[4] Because he did not have

any job assignments at the beginning of his shift, Williams situated himself between a

---

[1] Williams has been incarcerated at SCI Mahanoy since November 2005.

[2] Meals for prisoners on special diets are prepared in the diet room.

[3] Williams explained that there is some flexibility, approximately forty-five to sixty minutes, when prayer is due and when prayer may commence.

[4] SCI Mahanoy requires new prisoners to work in the Food Services Department for three months before being considered for job reassignment. A prisoner working utility detail acts as a floater in the kitchen, performing tasks such as assisting cooks, cleaning, and serving.

wall and hot box in the diet room and commenced noon prayer around 1:30 p.m.[5] At

approximately 1:35 p.m., Cheryl Stanitis, a staff member in the Food Services

Department, observed Williams in the diet room and ordered him to stop prayer and leave

the diet room immediately. Williams, however, continued to pray.[6] After he finished

praying, Robert Yarnell, a Food Services Department Supervisor, had Williams escorted

out of the kitchen to his cell block.

The next day Williams was charged with misconduct for refusing to obey an order

and for presence in an unauthorized area. A misconduct hearing was held. Williams

pleaded guilty to the charges, explaining that noon prayer was due, he had commenced

prayer, and once a formal prayer has commenced, it is generally continued until

completion. As a result of his misconduct, Williams lost his Food Services Department

job.

Williams appealed the misconduct hearing to the Program Review Committee

("PRC"), claiming that the institutional policies, procedures, and practices employed

were unethically repressive to the right to practice the religion of Islam. The PRC,

---

[5] According to the Ramadan calendar attached as an exhibit, noon prayer was due at 12:50 p.m. on October 23, 2006.

Prisoners working in the kitchen are only authorized to pray in the kitchen break area. Food Services Department policy states that prayer in the kitchen should not involve any ritual or display, and Williams testified that inmates have disruptive conversations and track urine in the break area.

[6] Williams' prayer lasted approximately ten minutes.

composed of Patti Ramer, Mike Vuksta, and Richard Spaide, denied his appeal because Williams had admitted that he was guilty for failing to follow regulations. Williams then submitted an appeal to Superintendent Edward J. Klem, claiming that the PRC's decision was based on incomplete review and it failed to address the grounds on which the appeal was based, the alleged unconstitutional actions of the kitchen staff, not his guilt. Klem denied the appeal. Williams submitted a final appeal to Robert S. Bitner, Chief Hearing Examiner, which was denied.

On September 18, 2007, Williams requested administrative intervention from John Kerestes, the new Superintendent. Kerestes responded stating that these issues had been grieved and reviewed in the past, and there were no plans to change policies and procedures. Williams then sent a letter to Jeffrey Beard, Secretary of the Department of Corrections, seeking remedy for unethical and unlawful institutional practices that unfairly infringe upon the practice of Islam at SCI Mahanoy. Williams' letter was referred to Ulli Klemm, Administrator of Religion and Volunteer Services, who informed Williams that, due to safety concerns and the orderly running of the institutions, inmates are afforded freedom to practice religion in the privacy of their cells and chaplaincy sponsored religious activities.

Williams filed a civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1 (the Religious Land Use and Institutionalized Persons Act of 2000, or RLUIPA) in October 2008. He alleged that the institutional policies, practices, and procedures of the Food Services Department unfairly infringe upon the practice of Islam at SCI Mahanoy in violation of the Free Exercise Clause of the First Amendment and the

4

terms of RLUIPA. He asserted that these allegedly unconstitutional policies, practices, and procedures resulted in defendants unfairly sanctioning Williams for exercising his constitutionally protected right to practice his religion, or showing a callous indifference towards his protected right by failing to take any corrective action.

The parties conducted discovery, and defendants filed a motion for summary judgment. Williams filed a reply to defendants' motion. He later filed a motion for leave to submit a supplement to an exhibit. Williams' motion was denied, and defendants' motion for summary judgment was granted. Williams filed a timely appeal.

II.    Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over an order granting summary judgment. Beers-Capitol v. Whetzel, 256 F.3d 120, 130 & n.6 (3d Cir. 2001). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We will view the facts in the light most favorable to the nonmoving party. Whetzel, 256 F.3d at 130 n.6. We review the District Court's denial to file a supplemental exhibit for an abuse of discretion. See United States v. Vosburgh, 602 F.3d 512, 538 (3d Cir. 2010).

III.    Discussion

The District Court properly granted defendants summary judgment as to Williams'

Free Exercise Clause claim and properly denied Williams' motion to submit a

supplement.[7]  However, the District Court erred in denying Williams' RLUIPA claim.

A.    Free Exercise Clause

The First Amendment provides that "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const.

amend. I.   Prisoners do not forfeit this right by reason of their conviction and

confinement in prison.  See DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000).  For a

prisoner, this right, however, is more limited.  Id. at 50-51. To establish a violation of the

Free Exercise Clause, Williams must show that defendants prevented him from engaging

in his religion without any justification reasonably related to legitimate penological

interests.  Turner v. Safley, 482 U.S. 78, 89 (1987).  In determining whether a restriction

is reasonably related to legitimate penological interests, courts weigh four factors:

> First, there must be a "valid, rational connection" between the
> prison regulation and the legitimate governmental interest put
> forward to justify it. . . . Second, a court must consider
> whether inmates retain alternative means of exercising the
> circumscribed right.  Third, a court must take into account the
> costs that accommodating the right would impose on other
> inmates, guards, and prison resources generally. . . . [F]ourth,

---

[7] The District Court did not err in dismissing defendant Beard from the case, as he had no personal involvement in the alleged infringement upon Williams' constitutional rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (personal involvement may be shown through allegations of personal direction or of actual knowledge and acquiescence).  A grievance addressed to Beard does not amount to personal involvement because Beard did not respond to the grievance and the grievance was referred to Klem. See id. at 1208.

> a court must consider whether there are alternatives to the regulation that fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests.

DeHart, 227 F.3d at 51 (citations and internal quotation marks omitted).

We agree with the District Court that Williams' free exercise rights were not violated. The District Court applied the four factors in determining defendants did not violate the Free Exercise Clause. The District Court properly found that the prison's interest in maintaining institutional order and security is legitimate and that those interests were rationally connected to the institutional policy that inmates must obey orders and may not be present in an unauthorized area. Many kitchen utensils and tools could be used as weapons and the Food Services Department employs 375 to 400 inmates and only 26 staff members. See id. at 50-51 (institutional security justifies limitations on the exercise of constitutional rights by inmates). Additionally, the District Court correctly noted that although Williams may not engage in his five obligatory prayers while working in the kitchen, he has alternative means of practicing his religion generally, by offering prayer in his cell and attending Jumu'ah prayer. See id. at 55.

In evaluating the third factor, the District Court considered the costs and complications of allowing Muslim inmates to return to their cells or choose any area in the kitchen to offer prayer, designating a permanent space for Muslim inmates to offer prayer, and exempting Muslim inmates from mandatory employment with the Food Services Department before being considered for job reassignment. As to the fourth factor, the District Court could not determine an alternative that could fully accommodate Williams at de minimis costs. Accordingly, we agree that defendants were entitled to

7

summary judgment on this claim.

B.      RLUIPA

RLUIPA heightens the protection from burdens on religious exercise.[8] See Washington v. Klem, 497 F.3d 272, 277 (3d Cir. 2007).  RLUIPA prohibits the Government from imposing a substantial burden on a prisoner's practice of his religion unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  "[A] substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs."  Washington, 497 F.3d at 280.  In determining the least restrictive means, "the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means."  Id. at 284.

Contrary to defendants' argument,[9] the District Court properly determined that Williams' religious exercise was substantially burdened when he was employed in the Food Services Department.  The District Court recognized that Williams' daily prayers

---

[8] Thus, even if a prison's actions are allowed under the Free Exercise Clause, they may not be allowed under RLUIPA.  See Van Wyhe v. Reisch, 581 F.3d 639, 651 (8th Cir. 2009).

[9] Defendants argue that Williams was not forced to substantially modify his behavior because prison policies allowed him to perform his prayers in the break room.

required that he prostrate himself on a clean surface in a quiet area. Although prayer was authorized in the break area, the Food Services Department policy states that prayer in the kitchen should not involve any ritual or display. Additionally, Williams stated that inmates have disruptive conversations and track urine from bathrooms in the break area. Thus, the District Court properly noted that Williams was forced to choose between offering prayers in the manner consistent with his religious belief and being disciplined for being in an unauthorized area or for refusing to obey an order.

Williams argued that the Food Services Department policies are not the least restrictive means of furthering the compelling government interest of maintaining order and security. He suggested that the Food Services Department implement a "leave and return" policy or designate a room in the kitchen for prayer. To support the viability of his suggestions, Williams asserted that the Food Services Department in his former prison institution implemented a "leave and return" policy, whereby kitchen workers were permitted to leave the kitchen in between job duties, which allowed Muslim inmates the ability to find an appropriate place to offer prayer in a timely and proper manner. Williams also testified that during the month of Ramadan, Food Services staff have afforded Muslim inmates a designated room in the kitchen to offer evening prayer and sunset prayer.[10]

---

[10] In his reply brief, Williams discusses the affidavit of a Muslim prisoner at SCI Mahanoy that stated that he was permitted to pray in a designated area in the kitchen. We cannot consider this argument because this affidavit was not included in the record below. See Webb v. City of Phila., 562 F.3d 256, 261 n.4 (3d Cir. 2009) (citation omitted).

In determining that the burden was the least restrictive means of furthering the compelling government interest of maintaining order and security, the District Court dismissed Williams' suggested "leave and return" policy. The District Court reasoned that it would not be possible to supervise Muslim inmates if they were permitted to leave the kitchen or choose areas they deem appropriate to offer their prayers during work shifts. We agree with this analysis. However, the District Court (and defendants) failed to acknowledge Williams' testimony that a designated room had been offered to Muslim inmates to offer evening prayer and sunset prayer during the month of Ramadan. This evidence demonstrates that a designated prayer room may be a viable option, as it has been successful in the past, albeit on a limited basis. Therefore, a reasonable factfinder could find that a designated prayer room in the kitchen is the least restrictive means of furthering the compelling government interest of maintaining order and security. Thus, we conclude there is a genuine issue of material fact, and hold that summary judgment was inappropriate. Accordingly, we will vacate the judgment as to Williams' RLUIPA claims.

C.    Motion to Submit Supplement

The District Court did not abuse its discretion in denying Williams' motion for leave to file a supplemental exhibit to his brief in support of his opposition to defendants' motion for summary judgment. The supplement Williams sought to submit is a copy of his official grievance, appeal, and responses regarding his grievance that defendants are retaliating against him by having someone contaminate his food, beverage, and oral hygiene items that are stored in his locker. This proposed supplement is similar to

10

another exhibit in his brief in support of his opposition to defendants' motion for summary judgment. Although Williams requested that defendants refrain from retaliatory acts as a form of injunctive relief in his Complaint, the District Court properly denied this motion because the supplement is not relevant to the claims raised in his complaint that defendants have violated the Free Exercise Clause of the First Amendment and RLUIPA.

D. Discovery Issues

In his brief, Williams also argues that defendants failed to cooperate in discovery and therefore summary judgment should have been precluded.[11] Williams filed one discovery-related motion in the District Court, which requested an enlargement of time to conduct discovery because defendants had failed to provide answers to his interrogatories.[12] Williams did not file any discovery-related motions after defendants served their responses to his interrogatories. In his response to defendants' motion for summary judgment, Williams argued that defendants delayed answers to his interrogatories, and that the answers to the interrogatories were misleading, evasive, pretextual, or false. However, Williams did not request any type of relief and did not file a separate motion raising these claims. Consequently, the District Court did not abuse its

---

[11] We review discovery matters for abuse of discretion. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010). "[W]e will not upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence." In re Fine Paper Antitrust Litig., 685 F.2d 810, 818 (3d Cir. 1982) (quotation marks omitted).

[12] The District Court dismissed as moot Williams' request for an enlargement of time to conduct his discovery after defendants provided responses to his interrogatories.

11

discretion by dismissing Williams' request for an enlargement of time to conduct his

discovery and not addressing his allegations regarding defendants' answers to the

interrogatories.[13]

For the foregoing reasons, we will affirm the District Court's order to the extent

that it granted Appellees' motion for summary judgment on Williams' Free Exercise

Clause claim and denied Williams' motion for leave to file a supplemental exhibit.  We

will vacate the order to the extent that it granted Appellees' motion for summary

judgment on Williams' RLUIPA claims, and we will remand to the District Court for

further proceedings consistent with this opinion.[14]

---

[13] Additionally, to the extent that Williams claims that the answers to interrogatories were misleading and false, we view any conflicting facts in the light most favorable to Williams.  See Whetzel, 256 F.3d at 130 n.6.

[14] Williams' motions for extension of time to file his reply brief are granted, and we have considered his reply brief in reaching our decision.  His motion to reconsider the Clerk's order of September 16, 2011, denying his request to expand the record on appeal, however, is denied.  The materials Williams wishes to include in the record on appeal are either not relevant to the issues on appeal or were not included in the record below.