**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2120
_____

CLIFTON WILLIAMS,
                                        Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
ULLI KLEMM, Administrator of Religion and Volunteer Services,
PA Department of Corrections; EDWARD KLEM, Former Superintendent
SCI Mahanoy; JAMES UNELL, Corrections Classification and
Prog. Manager SCI Mahanoy; JOSEPH WHALEN,
Facility Chaplaincy Program Director SCI Mahanoy;
JOHN KERESTES, Current Superintendent SCI Mahanoy;
NELSON ZEISET
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 4-08-cv-00044)
District Judge: Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 26, 2013

Before: AMBRO, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed: September 27, 2013)
_____

OPINION
_____

PER CURIAM

Clifton Williams appeals pro se from the District Court's entry of summary judgment in favor of the defendants. We will affirm.

I.

Williams is a Pennsylvania state prisoner incarcerated at SCI-Mahanoy and a practicing Muslim. His claims arise from the placement of a Christmas tree and wreaths in the prison's inter-faith chapel during the 2005, 2006 and 2007 holiday seasons. According to Williams, Muslims must participate in weekly communal prayer called Jumu'ah in a place devoid of offensive symbols, such as the tree and wreaths, which he claims Muslims associate with paganism. Williams claims that he was part of an Islamic "set-up" crew that prepared the chapel before Islamic services. He also claims that prison personnel prohibited him from removing the tree and wreaths by threatening to charge him with misconduct if he did. Finally, he claims that prison personnel (including those at previous prisons) have retaliated against him for filing lawsuits and grievances and practicing his religion over the years dating back to 1992. Williams's pro se amended complaint under 42 U.S.C. § 1983 asserts violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment, as well as retaliation for exercising his First Amendment rights.

The defendants[1] answered the complaint and the parties took discovery, including

---

[1] Williams named current and former corrections officials and prison employees as defendants. Because our resolution of this appeal does not turn on any particular

2

Williams's deposition. During discovery, the following undisputed facts emerged. The prison's Imam did not object to the presence of the Christmas tree or wreaths and instead continued to hold Jumu'ah services in the chapel without complaint. Before Islamic services, the Christmas tree was wheeled to the rear of the chapel and sometimes partially covered by a blackboard. The tree remained visible, but Muslims pray facing the opposite direction. Someone from the Christian community also would remove the larger wreaths on the chapel door after Christian services. The Islamic set-up crew was permitted to take down the smaller wreaths inside the chapel as well, though defendants stopped allowing them to do so when the wreaths became damaged. Williams continued to attend Jumu'ah while those items were present in the chapel. Defendants stopped placing the Christmas tree in the chapel in 2008.

Defendants ultimately moved for summary judgment, which the District Court granted. The District Court entered judgment on Williams's RLUIPA claim because it concluded that he could not show that defendants' conduct substantially burdened his exercise of religion. See 42 U.S.C. § 2000cc-1(a); Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007). As for Williams's free exercise claim, the District Court balanced the four factors enumerated in Turner v. Safley, 482 U.S. 78, 89-90 (1987), and concluded that he could not show that defendants' conduct was not reasonably related to the

---

defendant's role in the conduct Williams alleges, we will refer to them collectively as "the defendants." In doing so, we do not imply that any particular defendant engaged in or was otherwise responsible for any of the particular conduct discussed herein.

legitimate penological interest in accommodating different religions in the chapel. See

O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987) (applying Turner in this

context). The District Court further concluded that Williams had raised no genuine issue

as to his equal protection claim and that his retaliation claim was barred by the statute of

limitations. Williams appeals.[2]

## II.

Having carefully reviewed the record, we will affirm the District Court's judgment

primarily for the reasons explained by that court in its thorough opinion. We need only

briefly address some of Williams's arguments on appeal.

### A.     RLUIPA

Williams challenges the District Court's conclusion that defendants' conduct did

not substantially burden his exercise of religion.

> For the purposes of RLUIPA, a substantial burden exists where: 1) a
> follower is forced to choose between following the precepts of his religion
> and forfeiting benefits otherwise generally available to other inmates versus
> abandoning one of the precepts of his religion in order to receive a benefit;
> OR 2) the government puts substantial pressure on an adherent to
> substantially modify his behavior and to violate his beliefs.

 Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).

Williams argues that defendants' conduct, and in particular their threat of

---

[2] We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the
entry of summary judgment. See DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000) (en
banc). Summary judgment is appropriate only if, viewing the evidence and drawing all
reasonable inferences therefrom in favor of the non-moving party, there is no genuine
dispute as to any material fact and the moving party is entitled to judgment as a matter of
law. See id.

punishment if he removed the Christmas "décor" (as he often refers to it), establish both situations. We disagree. Williams has adduced no evidence that defendants forced him to choose between exercising his religion and obtaining some benefit. He also has adduced no evidence that defendants pressured him to violate his religious beliefs in any way. Williams does not contest that the Christmas tree was wheeled to the back of the chapel and was out of his line of sight during Jumu'ah or that he remained free to attend Jumu'ah during the periods in question and in fact did so. While Williams may have found the presence of the decorations in the chapel offensive, the prison Imam did not object to them and the mere fact that they may have "'diminish[ed] the sacredness of the area'" in Williams's view "ha[d] no tendency to coerce [him] into acting contrary to [his] religious beliefs." Washington, 497 F.3d at 279 (quoting Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 448, 450 (1988)).[3]

### B.      Free Exercise and Equal Protection

---

[3] This result is consistent with that in another of Williams's appeals that he identifies as a "related case." See Williams v. Sec'y Pa. Dep't of Corr., 450 F. App'x 191 (3d Cir. 2011). In that case, we concluded that Williams's religious exercise was substantially burdened by a policy that required him to pray during work detail in a break room where inmates held disruptive conversations and tracked urine from the bathroom, that did not permit any "ritual or display," and that thus did not permit Williams to prostrate himself as required during Islamic prayer. Id. at 195-196. That policy did more than "diminish the sacredness of the area" in which Williams prayed, Washington, 497 F.3d at 279, because it actually prevented him from praying in the required manner and thus forced him to "choose between offering prayers in the manner consistent with his religious beliefs and being disciplined[.]" Williams, 450 F. App'x at 196. Such is not the case here because Williams does not allege that defendants' conduct interfered with the manner in which he prayed during Jumu'ah in any way.

5

Williams's free exercise and equal protection claims required him to prove that defendants' conduct was not "reasonably related to legitimate penological interests" under the four factors set forth in Turner. See DeHart, 227 F.3d at 51 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see also id. at 61 (explaining that "Turner is equally applicable" to equal protection claims).[4]

The first Turner factor is whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Id. at 51 (internal quotation marks omitted) (quoting Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999)); see also Turner, 482 U.S. at 89. Williams argues that defendants' asserted penological interest in reasonably accommodating different religious beliefs is belied by the placement in the chapel of what he calls religion-specific symbols. But Williams's quarrel is not with the placement of the Christmas decorations in the chapel per se. Instead, his complaint is that defendants refused to allow their complete removal during Islamic services. And defendants' policy regarding the decorations during Islamic services was to permit the removal of the Christmas tree to the back of the chapel, the partial covering of the tree with a blackboard, the removal of the large wreaths from the chapel door and, until they became damaged, the smaller wreaths on the sides of the

---

[4] We recently clarified that, although the ultimate burden of persuasion is on the prisoner, the defendants bear the initial burden of making a showing on the first Turner factor. See Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012), cert. denied, 133 S. Ct. 41. The District Court issued its decision before we decided Sharp and did not specifically address who bore the burden on this factor, but "[t]his burden is slight," id., and the record leaves no doubt that defendants carried it here.

chapel as well.  There is no genuine dispute that this conduct is rationally related to defendants' interest in reasonably accommodating different religions in the chapel.

The second Turner factor is "whether inmates retain alternative means of exercising the circumscribed right."  DeHart, 227 F.3d at 51 (quoting Waterman, 183 F.3d at 213); see also Turner, 482 U.S. at 90.  Williams argues, quoting O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), that the Supreme Court has recognized that "[t]here are, of course, no alternative means of attending Jumu'ah."  Id. at 351.  As the Supreme Court immediately thereafter emphasized, however, this factor focuses on the inmate's ability to practice his or religion generally, not to engage in any religious activity in particular. See id. at 351-52; DeHart, 227 F.3d at 53-54.  The record shows that Williams had ample alternative means of practicing Islam, including by praying in his cell and continuing to attend Jumu'ah despite the partial presence of the decorations.[5]

The remaining Turner factors are the burden of accommodating the right and whether there are alternatives that could fully do so at a de minimis cost to valid penological interests.  See DeHart, 227 F.3d at 51; see also Turner, 482 U.S. at 90-91. Williams's primary argument on these factors is that they cannot weigh in defendants' favor because, after he filed his complaint in 2008, they stopped placing the Christmas

---

[5] We reached the same conclusion in Williams's other appeal, in which we affirmed the judgment against him on his free exercise claim.  See Williams, 450 F. App'x at 195.

tree in the inter-faith chapel altogether.[6] Defendants' subsequent conduct can be relevant to the last two Turner factors, see Sutton v. Rasheed, 323 F.3d 236, 257-58 (3d Cir. 2003) (per curiam), but the fact that defendants later decided to accommodate diversity of worship in a different way does not call into question the District Court's analysis of defendants' proffered reason for acting as they previously did. On this record, and given the deference due to prison officials in this context, see DeHart, 227 F.3d at 51, we agree that Williams has not adduced evidence from which a reasonable jury could find that defendants' conduct was not reasonably related to legitimate penological interests. Our ruling is based solely on the record before us, and we express no opinion on whether reinstituting the former policy would pass constitutional muster.

### C.    Williams's Remaining Arguments

Williams raises two other challenges that warrant brief discussion. First, he takes issue with the discovery process. In particular, he asserts that defendants failed to provide complete responses. He also claims that he did not receive a copy of the District Court's order granting him an extension of time to take discovery in response to defendants' initial summary judgment motion until after that time had passed. Williams did not seek any relief on these grounds in the District Court, however, and we will not address them in the first instance. Williams (a sophisticated litigant by pro se standards) also has not developed any meaningful argument on this point on appeal and instead

---

[6] No party has claimed otherwise, but we note that defendants' voluntary cessation of their challenged conduct has not rendered this case moot. See Burns v. Pa. Dep't of Corr., 544 F.3d 279, 283 (3d Cir. 2008).

merely invokes our plenary review and states that "[t]he argument in support of this issue remains undeveloped." (Appellant's Br. at 47.)

Second, Williams challenges the District Court's resolution of his retaliation claim. In his amended complaint, Williams alleged various instances of retaliation from 1992 through 2005, which he alleged continued at unspecified times thereafter. (ECF No. 23 at 14-17.) These alleged incidents included defamatory statements and the adulteration of his food and drink, and he requested an injunction against these alleged activities. The District Court held that these claims are barred by the statute of limitations. Williams does not contest that ruling as to any claims he may have had between 1992 and 2005. Instead, he argues that he sought relief on the basis of ongoing retaliation, including retaliation for filing this lawsuit, and that the District Court failed to address his claims in that regard.

We perceive no error. Williams's amended complaint does not specify any discrete post-2005 incidents, let alone when they occurred or who perpetrated them. Nor did he request leave to further amend his complaint or otherwise identify these claims in response to defendants' summary judgment motion. Williams argues on appeal that the alleged retaliation remains ongoing, and his reply brief attaches grievance forms referencing an incident allegedly occurring in 2013, after this appeal was filed. Any claims that Williams may have in that regard are beyond the scope of this appeal and he should have asserted them, if at all, in a separate civil action.

For these reasons, we will affirm the judgment of the District Court. Williams's

motion for leave to file his reply brief out of time is granted, and we have considered the arguments raised therein.